**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| GAY C. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:09-cv-0271-LJM-JMS |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Gay C. Brooks ("Brooks") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I.  Background**

Brooks filed applications for SSI and DIB on February 7, 2005, alleging an onset date of disability of January 1, 2004. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on June 30, 2008. Brooks appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Brooks and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on September 25, 2008. On January 6, 2009, the Appeals Council denied Brooks' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Brooks met the insured status requirements of the Act through December 31, 2009; (2) Brooks had not engaged in substantial gainful activity since January 1, 2004, the alleged onset date; (3) Brooks had the following severe impairments: a depressive disorder, a schizoaffective disorder, an anxiety disorder, a borderline personality disorder, alcohol dependence, polysubstance abuse, bilateral degenerative joint disease of the knees and bilateral carpal tunnel syndrome; (4) Brooks did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Brooks had the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk four hours of an eight hour workday and sit six hours, she was limited to work involving simple, repetitive tasks and should not be required to meet any unusually high time or production quotas; (6) Brooks was unable to perform any past relevant work; (7) Brooks was born on July 28, 1962 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Brooks had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Brooks was "not disabled," whether or not she had transferable job skills; and (10) considering Brooks' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Brooks could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Brooks had not been under a disability as defined in the Act from January 1, 2004, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§

404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.  Analysis

In this case, the ALJ determined that Brooks had severe mental and physical impairments, but that she could perform some jobs that existed in significant numbers in the national economy. Brooks contends that the ALJ's decision is not supported by substantial evidence.

Brooks first argues that the ALJ erroneously failed to give controlling weight to the opinions of her treating physicians who have treated her for years. She argues that the consulting examining physicians only saw her for a few minutes, and that their opinions should not be credited more than those of her treating physicians.

The ALJ acknowledged that treating physician Dr. Kristin Davis-Skaggs opined in December of 2004 that Brooks would not be able to sit or stand for prolonged periods due to arthritis, edema and pain. (R. at 23). The ALJ, however, reasoned that Dr. Davis-Skaggs' progress notes reflected routine treatment and did not contain clinical findings or laboratory studies suggesting significant functional limitations. (R. at 24). Dr. Davis-Skaggs also opined that Brooks was not totally precluded from work. *Id.*

Dr. Michael Wilson, specialist in internal medicine, saw Brooks in October 2007 and February 2008. (R. at 23). Dr. Wilson listed Brooks' impairments as fibromyalgia, chronic fatigue syndrome and chronic pain syndrome. *Id.* He reported that Brooks was unable to stand for any length of time, unable to walk more than ½ block, and unable to bend, lift or stretch. *Id.* The ALJ noted that Dr. Wilson had seen Brooks two times when he completed his February 2008 report. (R. at 24). The ALJ treated Dr. Wilson's report as "more of an examining physician than a treating physician, given his brief history with the claimant." *Id.* The ALJ also concluded that Dr. Wilson's limitations were "excessive" and inconsistent with his brief physical examination findings. *Id.*

The ALJ also noted that treating physician Dr. Michelle Oakerson saw Brooks from 2001 through July 2007. (R. at 23). Dr. Oakerson opined in February 2006 that Brooks could sit and stand and walk no more than one hour in an eight hour day. *Id.* Dr. Oakerson

restricted Brooks to lifting and carrying five pounds occasionally. *Id.* In February 2006, Dr. Oakerson listed Brooks' conditions as chronic arthritis and fibromyalgia, insomnia, depression, GERD, chronic abdominal pain and nausea, and carpal tunnel syndrome. *Id.* She identified the pain as aching/burning with sharp exacerbations including a shooting component in the back, neck and arms. *Id.* Dr. Oakerson opined that Brooks was unable to work due to fibromyalgia and arthritis. *Id.* Dr. Oakerson opined that when she last saw Brooks in July 2007, Brooks was unable to stand or walk very far or do fine work with her hands. *Id.*

The ALJ noted that Dr. Oakerson saw Brooks on an irregular basis for several years. (R. at 24). The ALJ determined that Dr. Oakerson's progress notes reflected routine treatment for symptoms and did not contain clinical findings or laboratory studies suggesting significant functional limitations. *Id.* The ALJ further determined that there was no clinically supported diagnosis of fibromyalgia, and that Dr. Oakerson's December 2005 notes reflected only mild diffuse tenderness and complaints of pain in legs, left hip and right knee. *Id.*

After reviewing each of the treating physicians' opinions, the ALJ found "the medical opinions of the nature and severity of the claimant's impairments offered by her treating physicians not well-supported by medically acceptable clinical and diagnostic techniques." (R. at 24). The ALJ further noted that the State Agency physicians determined that Brooks could work at the medium exertional level. (R. at 23). The ALJ did not give full credit to that opinion because subsequent evidence in the record established that Brooks was more limited than their assessment. (R. at 24). The ALJ concluded that Brooks could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk four hours of an eight hour workday and sit six hours, was limited to work involving simple, repetitive tasks and should not be required to meet any unusually high time or production quotas. (R. at 23-24).

"A treating physician's opinion concerning the nature and severity of a claimant's injuries receives controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'consistent with substantial evidence in the record.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus too quickly find[s] disability." *Id.* (internal quotation omitted). Accordingly, if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Id.* "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). *See also Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006) (clarifying "treating physician rule" and noting that it can be proper to give opinion of non-examining physician greater weight than that of treating physician).

In this case, the ALJ discussed the reports of the treating physicians and concluded

that their opinions that Brooks could not work were not adequately supported by clinical evidence, nor were their opinions consistent with the types of treatment given. The ALJ did not ignore the opinions of the treating physicians, but did find some of their limitations excessive. He provided explanations for his reasoning and his reasoning was supported by substantial evidence.

Brooks next asserts that although she has tried to work, she was let go due to her disabilities. She further contends that she cannot get hired because of the special working conditions she needs due to her disabilities. The ALJ acknowledged that Brooks is not able to perform all types of jobs. Testimony of a vocational expert reflected that Brooks would not be able to perform a large number of jobs, but that there were some jobs in the national economy that she should be able to perform. (R. at 25). The vocational expert identified jobs including telephone quotation clerks, general office clerks, and paramutual ticket checkers as examples of the types of jobs that would accommodate Brooks' limitations. (R. at 25-26). The ALJ properly relied on that testimony in determining that Brooks could perform some types of jobs. In addition, economic conditions and attitudes of employers are irrelevant when determining whether a claimant is disabled. *See* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of- (1) Your inability to get work; . . . (3) The hiring practices of employers. . . .").

As noted, the court's role in this case is not to attempt a *de novo* determination of Brooks' entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, even if the court might have weighed the evidence differently, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Brooks' impairments, the ALJ's decision must be affirmed.

## III. Conclusion

There was no reversible error in the assessment of Brooks' applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Brooks is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: __05/26/2010_____


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana